UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BP PRODUCTS NORTH AMERICA, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**HILLSIDE SERVICE, INC.,** *et al.*,<br><br>Defendants.<br><br>**ALBOYACIAN,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**BP PRODUCTS NORTH AMERICA, INC.,**<br><br>Defendant. | Civ. Nos. 9-4210, 9-5143<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**WILLIAM J. MARTINI, U.S.D.J.:**

   These matters come before the Court on motions for summary judgment filed in both of the above-captioned cases. Although the cases have not been formally consolidated, they are factually related, and all of the motions for summary judgment ask this Court to resolve the same legal question: whether a franchisor violates the New Jersey Franchise Practices Act, N.J.S.A. § 56:10-1, *et seq.*, ("NJFPA" or the "Act") by failing to renew a franchise agreement that contains no express right of renewal. For the reasons stated below, this Court answers that question in the affirmative. The Court will therefore grant summary judgment for the plaintiffs in Civil Action Number 9-5143 (the "Alboyacian Case") and the defendants in Civil Action Number 9-4210 (the "Hillside Case") (collectively, the "Franchisees").

1

I.      **Factual and Procedural Background**

BP Products North America, Inc. ("BP") is a refiner and marketer of gasoline and other petroleum products. The Franchisees operate BP service stations throughout New Jersey pursuant to the Commissioner Marketer Agreement ("CMA"). This Court has previously recognized that the CMA creates a legal franchise under the NJFPA between BP and the signatory, *see, e.g.*, *Sarwari v. BP Products North America, Inc.*, 2007 WL 1118344 (D.N.J. Apr. 9, 2007), and that issue is not contended in either of the above-captioned cases. Under the CMA, a franchisee does not purchase the BP fuel they dispense; rather, BP provides the fuel and the franchisee earns a commission on each gallon sold. In the present cases, the Franchisees also leased their respective service stations from BP pursuant to Lease Agreements. The CMA at issue in this case explicitly provides that the agreement lasts for a term of four years, and also explicitly provides that the franchisee shall have the option of renewing the agreement for two additional terms of four years each.

In August 2009, BP informed the Franchisees that it intended to withdraw from the CMAs at the expiration of the term of each individual agreement. As an alternative, BP offered all of the Franchisees the opportunity to purchase their service stations and act as dealers who purchased fuel products directly from BP and then sold them to customers – an arrangement BP refers to as Dealer Owned Dealer Operated stations. BP also offered all of the Franchisees the alternative of becoming Company Owned Dealer Operated stations, where BP would still own the service station property. Under either alternative, the Franchisees and BP would likely no longer be operating under a franchise for the purposes of the NJFPA. *See Sarwari v. BP Products North America, Inc.*, No. 06-2976, slip op. (D.N.J. filed Sept. 15, 2006) (preliminarily enjoining BP from changing nature of business arrangement with New Jersey franchisees).

On August 18, 2009, BP filed a complaint against Hillside Service, Inc., Mike Yigitkuri, and Vinod Oberoi (the "Hillside Defendants"), seeking a declaration from this Court that it has no obligation to continue business with the Hillside Defendants, that it is not obligated to renew the underlying CMAs, and that it is not responsible for any claimed lost value of the Hillside Defendants' business (the "Hillside Action"). On October 7, 2009, Ara Alboyacian, Mike Agolia, Ared Anac, Hagop Baga, Edward Balloutine, David Chong, Sevan Curukcu, Alfred Deppe, Joseph Klein, Raffi Korogluyan, Paul Lopes, Mary Lou Lopes, Abraham Manjikian, Imad Saleh, Walter Steele, Jayed Suddal, Aret Tokatlioglu, Richard Walter, Gregory Yigitkurt, Mike Yigitkurt, and Sahin Yigitkurt, (the "Alboyacian Plaintiffs") filed a complaint against BP seeking, among other relief, a declaration that BP's failure to renew the underlying CMAs

would constitute a violation of the NJFPA (the "Alboyacian Action"). The parties subsequently moved for summary judgment on the issue in both cases.

## II. Legal Analysis

None of the parties have challenged this Court's subject matter jurisdiction over these actions, which is proper under 28 U.S.C. § 1332.

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007). Where there are no genuine issues of material fact, the Court may properly resolve any remaining questions of law on summary judgment. *See, e.g.*, *Ingram v. County of Bucks*, 144 F.3d 265, 267 (3d Cir. 1998).

### B. The NJFPA

There are no genuine issues of material fact regarding the questions of law raised in the motions for summary judgment. Rather, the motions hinge entirely on this Court's interpretation of whether BP's proposed non-renewal violates the NJFPA. The NJFPA, by its plain terms, prohibits a franchisor from failing to renew a franchise agreement without good cause:

> It shall be a violation of this act for a franchisor to terminate, cancel or fail to renew a franchise without good cause. For the purposes of this act, good cause for terminating, canceling, or failing to renew a franchise shall be limited to failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise.

N.J.S.A. § 56:10-5. BP has signaled its intent not to renew its current franchise agreements – the parties do not dispute this fact. Under a plain reading of the clear language of Section 56:10-5, it would seem that BP must show good cause for that failure to renew.

BP does not argue that it has good cause; rather, BP argues that under the explicit terms of the CMA, the Franchisees had no expectation or right of renewal. BP notes that the CMA expressly provides only two renewal periods and thus contemplates that any franchise would exist for a maximum of twelve years. The CMA is silent as to what should happen after those renewal periods, but BP argues that the important fact is that it contains no express right to renewal after those two periods, and thus, any failure to renew does not violate the NJFPA. BP effectively urges this Court to construe Section 56:10-5 as only prohibiting a franchisor from failing to exercise an otherwise voluntary right of renewal created by contract, and not as creating a right of renewal beyond what exists in the franchise agreement.

But the New Jersey Supreme Court has stated in no uncertain terms that "once a franchise relationship begins [under the NJFPA], all that a franchisee must do is comply substantially with the terms of the agreement, in return for which he receives the benefit of an 'infinite' franchise – he cannot be terminated or refused renewal." *Dunkin' Donuts of America, Inc. v. Middletown Donut Corp.*, 495 A.2d 66, 76 (N.J. 1985)(citing Section 56:10-5)[1]; *see also* Craig R. Tractenberg, Robert B. Calihan, & Ann-Marie Luciano, *Legal Considerations in Franchise Renewals*, 23 SPG Franchise L.J. 198, 200 (2004) (interpreting NJFPA as creating a right to "unlimited renewals" absent good cause for nonrenewal). And the New Jersey Supreme Court has also made clear that the terms of a franchise agreement cannot circumvent the protections provided by the NJFPA. In *Westfield Centre Services, Inc. v. Cities Service Oil Co.*, 432 A.2d 48 (N.J. 1981), the franchisor – a gasoline products supplier – had a franchise agreement with the plaintiff-franchisee for a service station. The franchisor also owned the land on which the service station was built and leased that land to the franchisee. The lease agreement expressly stated that the lessor (in this case, the franchisor) could terminate the lease after providing 30 days notice to the lessee (the franchisee) if the lessor elected to sell the property or conduct substantial improvements on it. *Id*. at 50-51. At some point in the relationship, the franchisor/lessor announced its intention to sell the property, and notified the franchisee/lessee that its lease and the coordinate

---

[1] Despite BP's claim that such reliance is inappropriate, this Court finds the Supreme Court of New Jersey's language from *Dunkin' Donuts* very instructive in interpreting the New Jersey law at issue. Granted, *Dunkin' Donuts* involved a factually different situation – there, the franchisor *had* good cause for ending the franchise relationship – but that does not mean that it is not controlling law. The language from *Dunkin' Donuts* regarding the applicability of Section 56:10-5 is as plain and authoritative – as is the language of the Act itself – and neither supports BP's argument that the NJFPA only prohibits a franchisor from failing to exercise a renewal right explicitly provided for in the franchise agreement.

franchise agreements would expire by their terms at the end of the current renewal period. *Id.* The New Jersey Supreme Court held that – terms of the agreement aside – this constituted a failure to renew, and that under the NJFPA, the franchisor would have to pay the franchisee the reasonable value of the business less the amount realizable on liquidation. *Id.* at 55, 57 ("Thus, despite the terms of the agreement, the franchisor may not refuse, at least under some circumstances, to continue the franchise unless it reimburses the franchisee for its loss."); *see also General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 319 (3d Cir. 2001) ("Even if the terms of a private franchise agreement permit termination at will, § 56:10-5's good cause requirement will supersede that arrangement and impose a good cause requirement on the franchisor's decision."). This conclusion is in line not only with a plain reading of the statute, but also with the legislative purpose of the NJFPA, which "was enacted in large part to counteract the unequal bargaining power between franchisor and franchisee, which would allow a franchisor to leverage its bargaining strength so as to insert provisions in its private agreements with franchisees that would allow it to sever the franchise relationship at will." *General Motors Corp.*, 263 F.3d at 319).

  BP also asks the Court to limit the application of the NJFPA to those situations in which the franchisor seeks to arbitrarily and capriciously terminate the franchise agreement and/or those situations where the franchisor seeks to terminate the franchise agreement during the pendency of the agreement. But, again, this Court will not rewrite the statute. Section 56:10 states that a franchisor may not "terminate, cancel or fail to renew a franchise without good cause" and specifically limits good cause to "failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise." The statute says nothing about mid-term terminations or arbitrary and capricious acts. BP is correct that the NJFPA protects franchisees from arbitrary and capricious terminations, mid-term or otherwise, but the language of the statute and decisions above make clear that that is not the limit of its protections. And BP has offered nothing that shows otherwise.

  *Luso Fuel Inc. v. BP Products North America, Inc.*, 2009 WL 1873583 (D.N.J. June 29, 2009) (J. Cavanaugh) is inapposite. In *Luso*, BP sought to terminate another New Jersey- based franchise also governed by an agreement similar, if not identical to, the CMA. In *Luso*, the plaintiff was the owner and operator of a franchised BP gasoline station. *Id.* at *1. But BP did not own the property upon which the station sat; rather, BP leased the property from a third-party landlord. *Id.* The pertinent franchise agreements were explicitly limited by BP's right to possess the underlying property – if BP lost its right to possess the property, it would terminate the franchise. *Id.* At some point, BP did not renew the underlying property lease, and notified the franchisee that it intended to terminate

the franchise at the expiration of its lease agreement with the third-party. *Id.* Judge Cavanaugh, faced with this unusual factual situation, granted summary judgment for BP and held that the termination did not violate the NJFPA. *Id.* at *4. The Court noted that "Defendant had 'good cause' for terminating the relationship because it merely exercised a negotiated-for right that existed as part of the franchise's contractual framework." *Id.* But in so holding, the Court did not abrogate *Westfield*; instead, the Court sought to apply the NJFPA in a unique situation where neither the franchisor nor the franchisee had control over the leased property on which the franchise operated. Here, there is no third-party property owner to interfere with the franchise relationship between BP and the Franchisees. Rather, BP is the property owner. If this Court now interprets *Luso* to apply to the facts before it, it would reach a decision standing in direct contradiction to controlling precedent of the New Jersey Supreme Court. The Court cannot do so.

BP has entered into franchise relationships with the Franchisees. Unless BP is able to show good cause – something it has not even ventured to do – BP cannot fail to renew any of the franchise relationships without violating the NFJPA. That is not to say that this Court will compel BP to reward the Franchisees with permanent franchises where the CMA does not provide for them. *See, e.g.*, *Sarwari*, 2007 WL 1118344, at *4 (holding permanent injunctive relief inappropriate even where franchise violated statute if termination was in accordance with terms of franchise agreement). Rather, the Court holds that if BP chooses to violate the NJFPA by failing to renew the already existing franchises, BP will be liable to the Franchisees for damages in accordance with the Act. *See Westfield*, 432 A.2d at 469 ("In summary, we hold that a franchisor who in good faith and for a bona fide reason terminates, cancels or fails to renew a franchise for any reason other than the franchisee's substantial breach of its obligations has violated N.J.S.A. 56:10-5 and is liable to the franchisee for the loss occasioned thereby, namely, the reasonable value of the business less the amount realizable on liquidation.").

### III.  Conclusion

For the foregoing reasons, the Court will grant summary judgment in the Hillside Case for the Hillside Defendants, and the Court will grant partial summary judgment in the Alboyacian Case for the Alboyacian Plaintiffs. An appropriate order follows.

                                        /s/ William J. Martini
                              **WILLIAM J. MARTINI, U.S.D.J.**